UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| NATALIE LAHTI, on behalf of CHAD LAHTI, deceased,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Respondent. | Case No.: 1:17-cv-00080-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Natalie Lahti's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding her deceased husband Chad Lahti not disabled and denying his claim for disability insurance benefits.[1] *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On May 2, 2013, Petitioner Natalie Lahti's husband, claimant Chad Ronald Lahti,[2] protectively applied for Title II disability and disability insurance benefits. (AR 21.) Claimant

---

    [1] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).
    [2] Because Petitioner Natalie Lahti brings this action on behalf of her deceased husband Chad Ronald Lahti, whose alleged disability is at issue, this Decision distinguishes between "Petitioner" (Mrs. Lahti) and the "Claimant" (Mr. Lahti).

MEMORANDUM DECISION AND ORDER – 1

alleged disability beginning July 7, 2009.³ (*Id.*) His claims were denied initially on August 13, 2013 and then again on reconsideration on December 16, 2013. (AR 21.) On February 13, 2014, Claimant timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Claimant appeared and testified at a hearing held on July 22, 2015 before ALJ Christopher R. Inama in Boise, Idaho. (*Id.*) Impartial vocational expert Anne F. Aastum also appeared and testified at the hearing. (*Id.*)

On October 6, 2015, the ALJ issued a Decision denying Claimant's claim, finding that he was not disabled within the meaning of the Social Security Act. (AR 36.) Claimant timely requested review from the Appeals Council on or about November 18, 2015. (AR 17.) While Claimant's review was pending, he died of a pulmonary embolism on September 23, 2016. (AR 1818.) On January 12, 2017, the Appeals Council denied Claimant's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Claimant's administrative remedies having been exhausted, Claimant's surviving wife timely filed the instant action on his behalf, arguing that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is disabled from performing substantial gainful activity." Pet. for Review 2 (Dkt. 1). Petitioner contends the ALJ erred by failing to consider the impact of all of Claimant's physical and mental impairments in assigning a residual functional capacity, by not providing clear and convincing evidence to support his decision that

---

³ Through counsel, Claimant amended his alleged onset date to September 16, 2011 at the ALJ hearing in this matter. (AR 50.) The ALJ acknowledged the amendment (AR 50), but did not incorporate it into his decision, which uses the original alleged onset date of July 7, 2009. (AR 21, 23, 32, 36.) This discrepancy is not significant except as otherwise noted herein.

Claimant was not credible, and by improperly rejecting the opinions of treating provider Dr. Scott Hoopes and lay witness (and Petitioner here) Natalie Lahti. *See generally* Pet'r's Mem. ISO Pet. for Review (Dkt. 13). Petitioner asks for reversal and a holding that Claimant was disabled for a certain closed period, or, alternatively, for remand for further administrative proceedings. *Id.* at 20.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition,

age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 7, 2009 through his date last insured of December 31, 2013. (AR 23.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, through the date last insured, Claimant had the following severe impairments: "diabetes mellitus type II ('diabetes'), major motor seizures, schizoaffective disorder, bipolar disorder with psychosis, depression, anxiety disorder and alcohol-substance addiction disorder." (AR 23.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 26–29.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Claimant had the RFC:

> to perform light work, as defined in 20 CFR 40.1567(b), except limited to occasional climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent balance, stoop, kneel and crouch; occasional crawl; avoid concentrated exposure to vibrations; and avoid all exposure to hazards, such as unprotected heights and dangerous machinery. He is also limited to simple, routine, repetitive tasks; with only simple work related decisions; few workplace changes; rare, meaning 5% of the workday, interaction with supervisors and co-workers, with no tandem tasks, and no public contact.

(AR 29.) The ALJ further found that Claimant was unable to perform any of his past relevant work through his date last insured. (AR 34.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Claimant's RFC is compatible with work as a "silver wrapper," "router," and "marker II." (AR 35.) The ALJ further found that these jobs exist in significant numbers in the national economy. (AR 35–36.)

Based on the finding that Claimant could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Claimant "was not under a disability, as defined in the Social Security Act, at any time from July 7, 2009, the alleged onset date, through December 31, 2013, the date last insured." (AR 36.)

**B.      Analysis**

Petitioner raises four issues with the ALJ's decision. First, she argues the ALJ erred by failing to consider the impact of all Claimant's physical and mental impairments in assigning a non-exertional RFC. Second, she argues the ALJ erred by not providing clear and convincing evidence to support his decision that Claimant was not credible. Third, she argues the ALJ erred in rejecting the opinion of treating provider Dr. Scott Hoopes. Finally, she argues the ALJ erred in rejecting the opinion of lay witness Natalie Lahti. *See generally* Pet'r's Mem. ISO Pet. for Review (Dkt. 13). Because the Court is persuaded the ALJ erred in rejecting the opinion of Mrs. Lahti, which directly impacts the evidence on which the ALJ relied in assigning an RFC and in evaluating Claimant's credibility, that issue will be addressed first.

1. **The ALJ Erred in Rejecting the Opinion of Natalie Lahti.**

Petitioner contends that the ALJ erroneously rejected the statement of Natalie Lahti, Claimant's wife (and the Petitioner here). Pet'r's Mem. ISO Pet. for Review 17 (Dkt. 13). She argues that she was competent to testify regarding Claimant's symptoms because she witnessed his escalating mental symptoms and diabetic complications first-hand. Accordingly, she argues, the ALJ did not properly dismiss her testimony.

The record shows that Petitioner submitted a two-page letter to the ALJ, dated July 19, 2014, in support of Claimant's application for disability benefits. (AR 1776–1777.) The letter discussed Claimant's physical and mental limitations, implying (but not directly opining) that Claimant was incapable of working. (*Id.*) The ALJ addressed the letter in his decision:

> I give the opinion of Mrs. Lahti little weight. First, since she is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her observations is questionable. Moreover, by virtue of her relationship, as the wife of the claimant, her statements cannot be considered the observations of a disinterested third-party witness, whose opinion would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to this opinion because it, like the claimant's allegations, is not consistent with the preponderance of the evidence and opinions by medical doctors in this case.

(AR 34.)

"[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify" as to a claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918–919 (9th Cir. 1993). Moreover, the regulations in effect when the ALJ issued his decision expressly allowed for evidence from "non-medical sources … for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy." 20 C.F.R.

§ 404.1513(e)(4)(2013). To discount the testimony of a lay witness, the ALJ must give reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919.

The ALJ erred when dismissing Mrs. Lahti's testimony on the basis that she was not a "disinterested third-party witness." (AR 34.) The law is clear that friends and family members – who, by definition, will seldom be disinterested – are nonetheless competent to testify. The ALJ also erred when stating that Mrs. Lahti's lack of medical training calls into question "the accuracy of her observations." (*Id.*) Mrs. Lahti's letter does not purport to document "exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." (AR 1776–1777, 34.) Rather, her letter paints a picture of the progression, over 28 years of marriage, of Claimant's transition "from being someone who was very sociable and outgoing, able to work, and very active in church and outdoor activities" to someone whose "ability to interact with other people, do household chores, and participate in his hobbies and interests has declined severely." (AR 1776.)

The ALJ did not discuss the extent to which Mrs. Lahti's letter is consistent with Claimant's own testimony as to the alleged limiting effects of his impairments. Rather, the ALJ stated that his most important reason for discounting Mrs. Lahti's testimony was because it was "not consistent with the preponderance of the evidence and opinions by medical doctors in this case." (AR 34.) But he did not support or discuss this finding in further detail. The ALJ gave limited weight to, but did not outright reject, the opinion of treating provider Dr. Scott Hoopes, M.D. because the opinion encompassed a period after Claimant's date last insured. *See infra*. However, Mrs. Lahti's letter is consistent with Dr. Hoopes's opinion. Thus, to the extent the ALJ credited Dr. Hoopes's opinion, it was error for him to reject Mrs. Lahti's letter without

further analysis.[4] The ALJ's decision indicates he was persuaded that Mrs. Lahti's testimony was inconsistent with the record. But because he gave two erroneous reasons for rejecting her opinion and provided almost no support for the third reason, he cannot have properly rejected her opinion based on germane reasons. Moreover, even though Mrs. Lahti's letter was written after the date last insured, the letter contained her observations gathered over the prior 28 years – including the entire period from Claimant's amended alleged onset date through his date last insured. Nothing in the ALJ's decision indicates he gave any consideration to Mrs. Lahti's opinion during that period. For these reasons, Petitioner has shown reversible legal error in the ALJ's decision and her petition will be granted on this issue.

## 2. The ALJ's RFC Is Not Supported by Substantial Evidence.

Petitioner contends the ALJ erred by assigning Claimant an RFC that was not supported by substantial evidence. *Id.* at 12–16. She argues that the ALJ overstated the significance of Claimant's poor compliance with medical treatment and she offers an alternative explanation for the poor compliance as well as an alternative interpretation of the severity of Claimant's impairments. *Id.* She disputes the ALJ's finding that Claimant's mental health conditions were only moderately limiting, suggesting the record does not support this finding. *Id.* at 13.

SSR 96-8p requires an ALJ to assess an RFC "based on all of the relevant evidence in the case record, including information about the individual's symptoms." SSR 96-8p p. *2, 1996 WL 374184. The SSR later expressly lists "[l]ay evidence" as one category of "relevant evidence in the case record." *Id.* at p. *5. SSA regulations recognize, as evidence from

---

[4] As discussed *infra*, the Court finds that the ALJ did not err in giving Dr. Hoopes's opinion limited weight. It was nonetheless error, however, for the ALJ to reject Mrs. Lahti's opinion without any discussion at all about Dr. Hoopes's opinion.

nonmedical sources, "any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).

As discussed *supra*, the ALJ erred by failing to provide germane reasons for rejecting the evidence provided by Claimant's wife Natalie Lahti. Therefore, such evidence was relevant lay evidence from a nonmedical source that the ALJ was obligated to consider when assigning an RFC. It follows that such evidence was not properly considered when the ALJ assigned an RFC. In turn, this means that the RFC is not supported by substantial evidence. Accordingly, the parties' other arguments on this issue need not be considered. Petitioner's petition will be granted on this issue.

### 3. The ALJ Did Not Err in Deciding Claimant Was Not Credible.

Petitioner contends the ALJ erred by failing to provide clear and convincing reasons for rejecting Claimant's credibility. Pet'r's Mem. ISO Pet. for Review 18–20 (Dkt. 13). The ALJ stated that Claimant "has also been non-compliant with treatment recommendations, which reflects poorly on his allegations." (AR 31.) Petitioner notes that Claimant's primary care providers indicated that his chronic medical issues were difficult to control due to his mental disorders. *Id.* at 18. Petitioner cites an April 2013 record in which Michael A. Valerio, PA-C, noted the following:

> Patient with a known history of diabetes that has been difficult to manage. His hemoglobin A1c during his hospitalization was greater than 10 and has declined further diabetic education for one reason or another. He has had numerous hospitalizations with DKA but sometimes will also be hospitalized with hypoglycemic episodes. We have tried referring him to endocrinology in the past as well but again, for one reason or another, this has not occurred. I suspect most of this is lifestyle and most likely his underlying psychiatric disorder contributes to compliance.

(AR 838.) In a similar record from July 2012, the same PA-C noted the following:

> Poorly controlled and noncompliant with use of medications or his diet. Patient's diet fluctuates quite a bit and although he is aware that he should be consistent with this, he does not often follow through as he should. He is learning that possibly his mental illnesses limit his ability to follow through with his chronic medical condition management. He again tells me that he will be going to the diabetic clinic through Saint Alphonsus Regional Medical Center which I encouraged him to do. He has recently self decreased his insulin because of low blood sugars. I suspect this is more likely because of his irregular dietary habits as obviously his blood sugars are not controlled based on his hemoglobin A1c of greater than 11. He is aware that he is also overdue for an eye exam. 40 minutes was spent with patient today, greater than 50% face-to-face counseling, reviewing most recent blood work results and discussing treatment.

(AR 867.) In March 2011, Claimant's primary care doctor, Catherine Atup-Leavitt, MD, noted that his "chronic medical issues are difficult to manage because of mental disorder." (AR 1021.) Petitioner also refers to Claimant's 2013 admission to a psychiatric hospital, during which staff were so unsuccessful in treating his diabetes that he was transferred to the emergency room to stabilize his blood sugars. (AR 393.) Petitioner suggests that "If a specialized team in a very controlled environment could not manage [Claimant's] DMII, it is reasonable to believe [Claimant] struggled even on his best days." Pet'r's Mem. ISO Pet. for Review 18–19 (Dkt. 13).

Additionally, Petitioner argues that the ALJ discredited Claimant regarding his mental health conditions because at times Claimant was functioning fairly well. *Id.* at 19. Petitioner cites examples of particular struggles that Claimant experienced, including getting only limited benefit from three support groups he attended, being too overwhelmed to complete an intake assessment at a behavioral health clinic, and being unable to manage his own medications. *Id.*

Finally, Petitioner argues that the ALJ erred in rejecting Claimant's credibility based on an incorrect understanding that Claimant was employed, in spite of all of his physical limitations, during the closed period at issue. *Id.* at 19–20. Petitioner asserts that the 150 hours of community service the ALJ mentioned (AR 32) "were too difficult for [Claimant] to complete in an eight-hour day five-day a week fashion due to his physical and mental conditions." Pet'r's

Mem. ISO Pet. for Review 20 (Dkt. 13). However, Petitioner's only record citation to support this assertion is a statement from Dr. Hoopes, Claimant's psychiatrist for over a decade, that says "[Claimant] has not been able to return to Goodwill for his community service because he has been so upset by being taken into custody by the police which was traumatic (he was manicky). He becomes over-whelmed with anxiety even in the parking lot of Goodwill including welts." (AR 1300.) The same record also indicates that Claimant's "overall level of stress" at the time was "mild" and that he "will not be able to work his required community service from July 2 through August 30, 2013. Rand Martel, LCPC, and I are working with him to address his difficulties to enable him to continue his community service in September." (AR 1300–1301.) Dr. Hoopes subsequently noted, in October 2013, that Claimant "feels good about going back to work at Community Services." (AR 1306.)

Absent evidence of malingering, an ALJ may reject a claimant's testimony only by expressing clear and convincing reasons for doing so. *Benton v. Barnhart*, 331 F.3d 1030, 1040–1041 (9th Cir. 2003). Credibility determinations must be supported by specific, cogent reasons. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ offered several reasons for finding Claimant "not entirely credible." (AR 30.) Among these, the ALJ noted conflicting medical records regarding Claimant's seizures (including records from 2004 indicating Claimant did not have epilepsy), a lack of compliance with treatment recommendations, instances where Claimant's mental illnesses did not limit him, and inconsistent statements in the record about the extent and recency of Claimant's work history. (AR 30–32.) As an initial matter, Respondent points out that the ALJ identified an inconsistent statement regarding when Claimant ceased working. Resp't's Br. 17 (Dkt. 17). The ALJ noted that Claimant's application indicated he stopped working in July 2009, but a medical

record from September 2011 indicated that he had been unemployed only since December 2010.[5] (AR 32, 343.) Petitioner did not argue this point. Thus, even if Petitioner's arguments were otherwise persuasive, she has nonetheless not shown a lack of clear and convincing evidence as to at least one of the ALJ's reasons for perceiving Claimant as less than credible. Regardless, Petitioner's arguments are framed as reweighing the evidence to reach a conclusion different than the ALJ's, rather than showing that the ALJ's conclusion was not properly supported. Petitioner highlights examples of certain dates and times when Claimant was inarguably incapable of working. But the ALJ cited substantial evidence supporting the finding that at other times, Claimant's impairments did not prevent him from working. At a minimum, there is conflicting evidence in the record regarding the extent to which Claimant "worked" in 2012 and 2013. The ALJ found that such work, although falling short of substantial gainful activity, was evidence that Claimant's impairments were not as severe as he alleged. Petitioner argues that Claimant's work during this period was very limited in scope and duration, and, even so, it was very difficult for him to do. There is conflicting evidence on this point in the record. It is the ALJ's responsibility to resolve conflicting evidence, and the ALJ's findings and conclusions will not be overturned if they are supported by substantial evidence. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Petitioner has not shown that the ALJ failed to provide clear and convincing reasons for discounting Claimant's credibility, and her petition must therefore be denied on this issue.

---

[5] The fact that Claimant amended his alleged onset date from July 2009 to September 2011 is irrelevant to this portion of the ALJ's decision. The ALJ cited a medical record indicating Claimant had worked through December 2010, which is inconsistent with Claimant's prior representation that he had stopped working in July 2009. This inconsistency, irrespective of the original or amended alleged onset date, calls into question Claimant's credibility.

### 4. The ALJ Did Not Err in Giving the Opinion of Dr. Hoopes Limited Weight.

Petitioner contends the ALJ rejected the opinion of treating provider Dr. Scott Hoopes, Claimant's long-term psychologist, without providing clear and convincing evidence. Pet'r's Mem. ISO Pet. for Review 16–17 (Dkt. 13). She faults the ALJ for discounting Dr. Hoopes's opinion, which was rendered in January 2015 and which covers the period from January 2014 to January 2015, even though Claimant's date last insured was December 31, 2013. Petitioner argues that mental health symptoms do not escalate overnight and that "even if the limitations assessed by Dr. Hoopes did not reach the level of severity indicated until January of 2014, it is highly likely that [Claimant's] symptoms had reached the level of severity necessary for listing levels by … the date last insured." *Id.* at 16.

Dr. Hoopes completed a "Mental Residual Functional Capacity" form in January 2015 in which he opined that Claimant had marked or extreme limitations in 16 of 23 categories. (AR 1737–1738.) On the form's signature page, Dr. Hoopes indicated that Claimant "has had the degree of limitation I outlined in the attached Mental Residual Functional Capacity Questionnaire beginning Jan. '14." (AR 1739.) The opinion did not purport to apply to any period prior to January 2014.

In evaluating this evidence, the ALJ noted that Claimant's date last insured was before the period covered by Dr. Hoopes' opinion. (AR 33.) The ALJ stated "Dr. Hoopes' opinion does not necessarily relate back to the period at issue, as the claimant's issues may have worsened over time and due to age." (*Id.*) The ALJ also indicated that Dr. Hoopes's opinion was somewhat inconsistent with his own records depicting intermittent problems. (*Id.*) The ALJ cited record evidence that Dr. Hoopes had, many times, found Claimant's concentration and

attention were good. (AR 33, 1670–1736.) At least some of these times were prior to Claimant's date last insured. (AR 1671, 1673, 1675, 1677, 1679.)

Petitioner's argument that it is "highly likely" Claimant had reached listing-level severity prior to his date last insured is not evidence. The only evidence Petitioner points to is Dr. Hoopes's 2015 opinion. That opinion expressly limited its scope to a period beginning in January 2014, which was after the date last insured. The ALJ's decision to give the opinion limited weight was justified because the opinion did not apply to any part of the closed period at issue. The ALJ gave a clear and convincing reason for discounting the opinion, and it will not be overturned on appeal.

5. **This Matter Will Be Remanded for Further Proceedings.**

Petitioner requests the case be remanded for an immediate award of benefits, arguing that "further administrative proceedings would serve no useful purpose" and "[t]here are no outstanding issues to be determined." Pet'r's Mem. ISO Pet. for Review 20 (Dkt. 13).

This Court may remand to an ALJ with instructions to calculate and award benefits when each part of a three-part test is satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The Court is not persuaded that all three requirements of this standard are satisfied on this record. As noted above, the ALJ gave limited weight to the opinion of Claimant's treating psychiatrist Dr. Hoopes because the opinion covered a period beginning less than one month after the Claimant's date last insured. The record does not disclose the extent to which Dr.

Hoopes believed Claimant was limited as of his date last insured, and the Court finds that further developing the record by requesting Dr. Hoopes's opinion as to the extent of Claimant's limitations as of December 31, 2013 could serve a useful purpose.  Additionally, the Court has found in this decision that the ALJ improperly discredited Petitioner's testimony and, therefore, the second part of the test is satisfied.  But the Court is not persuaded that crediting Petitioner's rejected testimony as true would necessarily require the ALJ to find the claimant disabled on remand.  Thus, neither the first nor the third parts of the *Garrison* test are satisfied, and remand for calculation and an award of benefits is not appropriate in this case.  The appropriate remedy upon granting Petitioner's petition is to remand for further proceedings to decide whether Claimant was disabled during the period from his amended alleged onset date through his date last insured.

## IV. **CONCLUSION**

Petitioner has shown that the ALJ erred by improperly rejecting the opinion of lay witness Natalie Lahti.  She has also shown that the ALJ's RFC assessment was not supported by substantial evidence.  Because Petitioner has shown that the ALJ's decision includes legal error and is not based on substantial evidence, her petition will be granted.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED,** and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: September 27, 2018

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge